UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

LORI SCHARFF, MICHAEL GODINO, EDWARD
MOLLOY and LONG ISLAND COUNCIL OF
THE BLIND,

Plaintiffs,

-against-

COUNTY OF NASSAU and SHILA SHAH-GAVNOUDIAS,
Commissioner of Nassau County Department of Public
Works, in her official capacity,

Defendants.

-----------------------------------------------------------------------X,

FILED
U.S. DISTRICT COURT, E.N.Y.

★ COMPLAINT ★

SEP 15 2010

LONG ISLAND OFFICE

(SI)   10 Civ-_____

CV-10 4208

HURLEY, J.

TOMLINSON, M

## STATEMENT OF PLAINTIFFS' CLAIMS

1. Plaintiffs file this action complaining of defendants for violations of the Americans with Disabilities Act, 42 U.S.C. Section 12131 et seq. and 42 U.S.C. Section 12204 et seq. (hereinafter, "ADA"). Plaintiffs seek declaratory and injunctive relief, compensatory damages as well as attorney's fees and costs against the defendants.

## PARTIES

2. Plaintiff LORI SCHARFF (hereinafter, "SCHARFF") is a resident of Nassau County, New York. She lives in Malverne, New York and is an individual who is blind.

3. Plaintiff MICHAEL GODINO (hereinafter, "GODINO") is a resident of Nassau County, New York. He lives in Malverne, New York and is an individual who is visually impaired.

4. Plaintiff EDWARD MOLLOY (hereinafter, "MOLLOY") is a resident of Nassau County, New York. He lives in West Hempstead, New York and is an individual who is visually impaired.

1

5. Defendant COUNTY OF NASSAU (hereinafter, "NASSAU") is a New York State municipal corporation existing under and by virtue of the laws of the State of New York.  NASSAU is incorporated in Nassau County, New York.

6. Defendant SHILA SHAH-GAVNOUDIAS (hereinafter, "COMMISSIONER"), is the Commissioner of Nassau County Department of Public Works.

## VENUE AND JURISDICTION

7. This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 2201 and through the ADA.

8. This Court has venue through the municipal activities of the defendants in Nassau County, New York.

## ALLEGATIONS OF FACT AND STATEMENT S OF LAW
## COMMON TO ALL CLAIMS

9. Defendant NASSAU is a local governmental entity under the definition of that term provided in 42 U.S.C.A. § 12115 (1).

10. Defendant NASSAU owns or otherwise exerts administrative control over a substantial portion of the transportation infrastructure in Nassau County. That infrastructure includes including public roadways, adjacent pedestrian walkways, traffic control signals and pedestrian crossing signals.

11. Defendant COMMISSIONER was recently appointed Commissioner of Nassau County Department of Public Works.

12. The COMMISSIONER is the highest supervisory and managerial official in the Nassau County Department of Public Works. The Department of Public Works includes

2

Nassau County's Traffic Engineering Unit and the transportation infrastructure owned or operated by Nassau County.

13. The installation, maintenance and repair of traffic control signals and pedestrian crossing signals falls under the Nassau County Department of Public Works – Traffic Engineering Unit.

14. Hempstead Avenue, between Hempstead Turnpike and Sunrise Highway, is a road owned by Nassau County.

15. Defendants own or otherwise exert administrative control over the pedestrian walkways, traffic control signals and pedestrian crossing signals located at the intersections along Hempstead Avenue between Hempstead Turnpike and Sunrise Highway in the Town of Hempstead.

16. At all times hereinafter mentioned, Harold Lutz was the head of Nassau County's Traffic Engineering Unit.

17. Plaintiff LONG ISLAND COUNCIL OF THE BLIND (hereinafter, "LICB") is a private volunteer organization affiliated with the American Council of the Blind of New York, Inc. and is a domestic not-for-profit corporation duly organized and existing under and by virtue of the laws of New York State. As an affiliate of the American Council of the Blind of New York, Inc., LICB is subject to all tax and corporate privileges and obligations available to the New York State Council of the Blind.

18. LICB has been organized since 1981. Plaintiffs SCHARFF, GODINO and MOLLOY are all members and current or former officers of LICB. Plaintiffs SCHARFF, GODINO and MOLLOY all reside close to Hempstead Avenue.

19. The mission of LICB is to educate the general public as well as the blind and visually impaired as to the rights, responsibilities, problems and potentials of blind and visually impaired persons; providing maximum opportunities to become self-sufficient, self-supporting and productive members of society and to give particular and special attention to the specific needs of blind or visually impaired Long Island residents.

20. Advocacy for and promotion of accessible pedestrian crossing signals has been the subject of a long history of advocacy by LICB and its members, and continues to be one of the thirteen current projects of the LICB. For purposes of this action, accessible pedestrian signals will be referred to as ("APS").

21. LICB's advocacy for APS began in or around 2000. Since that time, various members of LICB, acting on behalf of LICB's mission to promote APS, volunteered approximately two to three hundred hours of their time in its effort to persuade Nassau County officials to install APS at intersections controlled by Nassau County. The time spent included research into APS technologies available in the marketplace; research into other municipalities and states that use such technologies; research into the costs associated with installation of such technologies; identification of pedestrian intersections subject to Nassau County's control; research into national and state related to the obligations of Nassau County to install APS; inspection of intersections subject to Nassau County's control; phone calls, correspondence and meetings with Nassau County officials and employees to promote the installation of APS in intersections controlled by Nassau County. In addition to the collective time spent by LICB members, its members have donated money to LICB that was necessary to promote the installation of APS by Nassau County.

4

22. The total time and money spent by LICB members in promotion of its mission to persuade Nassau County to install APS was a substantial proportion of the total time and resources spent by its members on all LICB activities.

23. A substantial portion of the advocacy efforts by plaintiffs were verbal and written requests to officials and employees of Nassau County's Department of Public Works/Traffic Engineering Division. The requests specifically asked Nassau County to install accessible pedestrian crossing signals at all intersections controlled by Nassau County that would provide blind, visually impaired and deaf-blind individuals with the same information that pedestrians with vision are provided when they cross Nassau County's streets.

24. Prior to plaintiffs' communications with Nassau County officials, APS were available for purchase by reputable manufacturers and distributors of pedestrian crossing signals. APS are used in conjunction with visual crossing signals in use in Nassau County and other governmental jurisdictions.

25. Nassau County currently approves the use of an APS manufactured by Polara Engineering, Inc. and distributed by Traffic Systems, Inc. of Bay Shore. The accessible crossing signal in question has been available for purchase since 2003.

26. Plaintiffs requested APS because they wanted to cross Nassau County's streets as safely as possible and because the Americans with Disabilities Act obligated Nassau County to provide APS. In their communications with Nassau County officials, plaintiffs informed those officials that the Americans with Disabilities Act obligated it to provide blind and visually impaired individuals with APS at intersections that have pedestrian crossing signals.

27. When the plaintiffs and other individuals who are blind, visually impaired or deaf-blind cross intersections along Hempstead Avenue between Hempstead Turnpike and Sunrise Highway without the aid of APS they face a substantially heightened risk of serious or deadly injury from an automobile accident compared to the risk faced by individuals who are not blind or visually impaired.

28. Nassau County officials who participated in the foregoing communications refused to commit to providing the relief requested by the plaintiffs.

29. In the fall of 2007, plaintiff Michael Godino and John Jeavons, President of LICB, met with Harold Lutz at the offices of the Nassau County Office of the Physically Challenged. Don Dreyer, former Director of the Nassau County Office of the Physically Challenged, attended the meeting, along with Mike Majackis, Matt Dwyer and Frank Murtagh. Upon information and belief, Majackis, Dwyer and Murtagh were employed by the Nassau County Office of the Physically Challenged.

30. At the fall, 2007 meeting with Harold Lutz, plaintiff Godino and John Jeavons reiterated their prior requests for installation of APS at all intersections controlled by Nassau County and then hand delivered to Harold Lutz a list of intersections that plaintiffs believe should have APS. That list was previously delivered to Nassau County transportation employees by LICB. The list contained priority intersections because of their high volume of use by pedestrians generally and/or their proximity to (modes of public transportation and) to the homes of visually impaired individuals residing in Nassau County who would receive an immediate benefit from installation of APS. That written list, incorporated into a 2007 FOIL response by the defendant, is

6

annexed hereto as Exhibit A of this Complaint and is incorporated herein as if fully set forth.

31. Harold Lutz acknowledged the plaintiffs' written request but would not commit to installing APS at the requested intersections. Lutz did indicate that he would look into installation of APS at a few locations on the list.

32. In 2009, Raymond Ribeiro, the former Commissioner of Public Works for Nassau County, was quoted in a Newsday article stating that it was the policy of Nassau County to install APS in neighborhoods near the homes of visually impaired individuals upon request by Nassau County residents. This was in response to a request for APS from a parent of a blind child for installation of an APS near the child's home.

33. In 2009, Nassau County performed a highway renovation project that included the alterations and new installation of pedestrian crossing signals along Hempstead Avenue from Route 24 to Sunrise Highway in Lynbrook. Some or all of the intersections along Hempstead Avenue that are included in Exhibit A of the Complaint were included in that project.

34. No APS were installed during the course of the alterations and new installations performed along Hempstead Avenue in 2009.

35. Upon information and belief, the additional cost of installing APS that would have been incurred by Nassau County when it performed the renovation project that included the alterations and installation of pedestrian crossing signals along Hempstead Avenue was insignificant in relation to the total cost of the renovations performed, and would not have constituted an undue burden or hardship on the County.

7

36. The installation and maintenance of pedestrian crossing signals are a public service provided by Nassau County that facilitates the safe crossing of Nassau County streets and roadways by pedestrians, and the public life and private commerce that flows from that service.

## PLAINTIFF LORI SHARFF

37. Plaintiff Lori Sharff is thirty-five years old and has been totally blind since the age of six.

38. Ms. Sharff currently resides at 104 Tilrose Avenue in Malvern, New York. She has lived at her present address since 2004.

39.  Ms. Sharff graduated from Molloy College in 2000. She received a Masters Degree in Social Work from Fordham University in 2001.

40. Ms. Sharff is currently employed by Catholic Charities in Hicksville, New York and works as a coordinator of intake and referral for the agency. Her job involves assessing persons in need of crisis intervention, emergency food and shelter funds, food stamps and other social services. She has been employed in this capacity since 2002.

41. Prior to her employment at Catholic Charities, Ms. Sharff performed volunteer work as a crisis intervention worker at the Long Island Crisis Center. Her duties included providing counseling for persons in crisis from a crisis hot line at the Center.

42. Ms. Sharff enjoys various recreational activities such as dining out, attending lectures and concerts, traveling, skiing, among other activities. For example, Ms. Sharff enjoys attending lectures and concerts in New York City and goes skiing in South Dakota.

43. Ms. Sharff has long been an advocate for persons who are blind. She has been a member of the American Council of the Blind since 1994 and served as an officer for

8

the organization. She presently serves as the Chairperson of the Women's Concerns Committee and the Sight and Sound Impaired Committee. Ms Scharff has been a member of the local chapter of the American Council of the Blind, the Long Island Council of the Blind, and has served as a past president of the organization. Ms. Scharff is presently the Secretary for the Long Island Council of the Blind.

44. Ms. Scharff has participated directly in various advocacy efforts performed by the Long Island Council of the Blind, including presentations to State and County legislatures regarding issues of importance to persons who are blind, Co-chairing a State convention on blindness issues, sensitivity training for public bus drivers regarding stop announcements as well as many other advocacy efforts.

45. Ms. Scharff participated directly in advocacy efforts by the Long Island Council of the Blind to secure APS in Nassau County, including the intersections along Hempstead Avenue that are the subject of this Complaint.

46. Ms. Scharff uses a variety of transportation methods including fixed-route public buses, Nassau County paratransit services, rail transportation, taxi cabs, rides from other people, airplane travel, and by walking to destinations. Ms. Scharff uses a guide dog, Kelly for assistance when walking.

47. Ms. Sharff's present address on Tilrose Avenue in the Village of Malverne. Tilrose Avenue is within walking distance of Hempstead Avenue, where places of public accommodation, public transportation and other public services are located.

48. Ms. Scharff uses places of public accommodation, public transportation and public services located along Hempstead Avenue in a variety of ways to meet her needs. Ms. Scharff's bank, J.P. Morgan Chase, is located on Hempstead Avenue. Ms. Scharff uses

the services of the U.S. Post Office on Hempstead Avenue. Ms. Scharff shops for food at Cross Island Fruit on Hempstead Avenue. Ms. Scharff's physician has an office in Malverne across Hempstead Avenue.  The Veterinarian Ms. Scharff uses for Kelly is located on Hempstead Avenue. Ms. Scharff uses the services of the Malvern Village Hall located at Church Street which is accessible by traveling over intersections along Hempstead Avenue. The Long Island Railroad Station that Ms. Scharff uses to travel to New York City is located off of Hempstead Avenue. Restaurants that Ms. Scharff eats at are located on Hempstead Avenue.

49. Because the defendants filed to install APS on Hempstead Avenue, Ms. Sharff's ability to travel independently where and when it is convenient and necessary for her to do so has been significantly impeded.

50. As a result of the failure of the defendants to install APS on Hempstead Avenue, Ms. Scharff is deprived of the opportunity to access the various places she uses until she is able to find someone to accompany her or until she can arrange for a paratransit bus to drive her.

51. Over the course of her use of paratransit, Ms. Scharff has found that paratransit requires up to 48 hours prior notice to request rides with specific times for pick-up and drop-off, requires substantial additional time in transit that comparable modes of public transportation, and is unreliable because drivers fail to meet specified pick-up and drop off times.

52. In addition a paratransit trip costs approximately $8.00 per trip. This expense is significant and wasteful of her limited income, and especially galling when many of her needs are within walking distance of her home.

53. But for the failure of the defendants to install APS on Hempstead Avenue near to Ms. Scharff's home, Ms. Scharff would walk independently to the Village of Malvern and neighboring areas by herself on a regular basis.

54. But for the failure of the defendants to install APS on Hempstead Avenue near to Ms. Scharff's home, Ms. Scharff would walk independently to the Long Island Railroad Station in the Village of Malvern and take the train to New York City by herself on a regular basis.

55. Ms. Scharff's dentist is located on Hempstead Avenue in West Hempstead. Ms Scharff is unable to take the MTA fixed route bus to her dentist because there is no APS to enable her to cross the street. Consequently, she usually pays for a taxi cab at far greater expense to her.

56. Ms. Scharff's physician has an office across Hempstead Avenue at the end of plaintiff's street. She must call a cab or obtain a ride to travel the few blocks to her physician's office.

57. Defendants were aware or should have been aware of Ms. Scharff's need to have APS installed on Hempstead Avenue because officials of Nassau County involved in meetings regarding the installation of APS in Nassau County knew Ms. Scharff lived near the Village of Malvern and because a list including the lights Ms. Scharff needs to have accessible was presented to the defendants by formal request for accessibility. See Exhibit A.

## PLAINTIFF MICHAEL GODINO

58. Plaintiff Michael Godino is 49 years old and has been visually impaired since he was 31 years of age.

59. Mr. Godino currently resides at 104 Tilrose Avenue in Malvern, New York with
    plaintiff Lori Scharff since 2004.

60. Mr. Godino has an Associates Degree in Arts and Sciences from Nassau Community
    College and a B.S. in Physics from Queens College.

61. Mr. Godino is currently employed by the Brooklyn Center for Independence, a not-for-
    profit organization devoted to advocacy for Brooklyn residents with disabilities. For the
    past ten years he has worked for BCID and two other Independent Living Centers in
    New York, and has become an expert in advocating for modifications in public and
    private laws, rules and practices that make various aspects of public activities, services
    and benefits accessible to individuals with disabilities.

62. Mr. Godino enjoys various recreational activities such as dining out, attending lectures
    and concerts, traveling, and other activities.

63. Mr. Godino has been an officer in the Long Island Council for the Blind, the New York
    State Council for the Blind, and other statewide and national disability advocacy
    organizations.

64. Mr. Godino participated directly in advocacy efforts by the Long Island Council of the
    Blind to secure APS in Nassau County, including the intersections along Hempstead
    Avenue that are the subject of this Complaint.

65. Mr. Godino uses a variety of transportation methods including fixed-route public buses,
    Nassau County paratransit services, rail transportation, taxi cabs, rides from other
    people, airplane travel, and by walking to destinations.

66. Because the defendants filed to install APS on Hempstead Avenue, Mr. Godino's
    ability to travel independently where and when it is convenient and necessary for him
    to do so has been significantly impeded. [1]

67. As a result of the failure of the defendants to install APS on Hempstead Avenue, Mr.
    Godino is deprived of the opportunity to access numerous goods, services and
    activities.

68. Mr. Godino's needs for access to places of public accommodation, public transportation
    and public services located along or through Hempstead Avenue are similar to the
    needs of plaintiff Lori Scharff. Consequently, the difficulties and expenses faced by Mr.
    Godino because of the lack of APS along Hempstead Avenue are very similar to the
    difficulties and expenses of plaintiff Lori Scharff as set forth above.

69. Defendants were aware or should have been aware of Mr. Godino's need to have
    APSinstalled on Hempstead Avenue because officials of Nassau County involved in
    meetings regarding the installation of APS in Nassau County knew Mr. Godino.

## PLAINTIFF EDWARD MOLLOY

70. Plaintiff Edward Molloy is sixty years old and suffers from Ushers Disease. He has
    been visually impaired for over twenty five years. In the recent past he has become
    deaf.  As a result, he would rely on the vibratory feature of APS to signal his ability to
    safely cross public streets.

71. Mr. Molloy currently resides at 540 Washington Avenue, West Hempstead, New York,
    11522. He has lived at his present address since 1968.

---

[1] Mr. Godino uses the same primary care physician as Lori Scharff. That physician is located across Hempstead
Avenue a few blocks from their home.

72. Mr. Molloy graduated from Rochester Institute of Technology in 2001. He received an associate degree in computers and later went on to receive a certificate as a local area network specialist from a computer career center in Garden City, New York.

73. Mr. Molloy has previously been employed at Yours, Ours, Mine Community Center in Levittown, New York where he taught senior citizens how to navigate the computer.

74. Mr. Molloy has volunteered for various agencies that help persons who are blind. He has been a member of the Long Island Council of the Blind as well as the American Council of the Blind. From 2005-2008 he served as treasurer for American Council of the Blind. In addition he was also treasurer for Long Island Council of the Blind from 2003 until 2009, when he was promoted to Vice President, which is the position he presently holds today.

75. Mr. Molloy has worked with Long Island Council of the Blind to obtain accessible pedestrian signals throughout parts of Nassau County, including along Hempstead Avenue which are the subject of this complaint.

76. Mr. Molloy uses various types of transportation methods including Nassau County and New York City paratransit, the Long Island Rail Road, taxi cabs, rides from other people, airplane travel and by walking. Mr. Molloy uses a long white cane as prescribed by a Certified Orientation and Mobility Specialist to assist him when walking.

77. Mr. Molloy's present address is within walking distance of many of the services in the area, approximately ten to fifteen blocks away. Mr. Molloy uses the library, U.S. Post Office, pharmacy, food shopping, and church all within walking distance from his home.

14

78. Because the defendants failed to install APS on Hempstead Avenue near Mr. Molloy's home, he is extremely apprehensive about crossing roadways with pedestrian crossing signals. Consequently, he restricts himself from participating in activities that he otherwise would have participated in. When he does go out to areas that are not in close proximity to the LIRR he usually asks his grandson for a ride or arranges for a paratransit bus to take him.

79. Over the course of his use of paratransit, Mr. Molloy has found that paratransit requires up to 48 hours prior notice to request rides with specific times for pick-up and drop-off, requires substantial additional time in transit that comparable modes of public transportation, and is unreliable because drivers fail to meet specified pick-up and drop off times.

80. Defendants were aware or should be aware of Mr. Molloy's need to have accessible pedestrian system installed on Hempstead Avenue because of his association with plaintiff LICB.

## SPECIFIC OBLIGATIONS SET FORTH IN 28 C.F.R. §§ 35.149-35.151

81. The regulations set forth in 28 C.F.R. Part 35 declare the rights of disabled individuals vis-a-vis public entities and the affirmative duties of public entities towards individuals with disabilities. 28 C.F.R. §§ 35.149-35.151 describe the obligations of public entities to eradicate discrimination against individuals with disabilities when facilities owned or controlled by public entities are not accessible to individuals with disabilities.

82. 28 C.F.R. § 35.151 requires newly constructed and altered facilities to be constructed and altered so that they are readily accessible to and usable by individuals with disabilities. [2]

83. Pedestrian traffic signals are facilities as the term "Facility" is defined in 28 C.F.R. Part 36, Appendix A, § 3.5.[3]

84. Defendant Nassau County violated its obligations under 28 C.F.R. § 35.151 when it installed new pedestrian traffic control signals at intersections along Hempstead Avenue in 2008, but failed to install APS at those intersections.

85. 28 C.F.R. § 35.150 requires the program or service of pedestrian crossing signals to be readily accessible to and usable by the plaintiffs and other similarly situated individuals with disabilities. This section requires installation APS where there are existing pedestrian traffic signals if such installation is necessary to ensure that pedestrian intersection crossings in a given area, when viewed in their entirety, are readily accessible to and usable by individuals with disabilities.

86. Defendants failure to install APS at intersections where existing pedestrian crossing signals are provided, in accordance with the methodology set forth in 28 C.F.R. §§

---

[2] 28 CFR §§ 35.151(a) and (b) provide as follows:

> (a) Design and construction. Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, if the construction was commenced after January 26, 1992.
>
> (b) Alteration. Each facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities, if the alteration was commenced after January 26, 1992.

[3] That definition is: "All or any portion of buildings, structures, site improvements, complexes, equipment, roads, walks, passageways, parking lots, or other real or personal property located on a site."

16

35.150(b), (c) and (d) constitutes a failure to comply with their obligations under 28
C.F.R. 35.150(a).

## GENERAL OBLIGATIONS SET FORTH
### IN 28 C.F.R. §§ 35.130 (a) AND (b)

87. 28 C.F.R. § 35.130(a) and various subsections of 28 C.F.R. § 35.130(b) apply to the
failure of the defendants to provide APS along Hempstead Avenue.

88. 28 C.F.R. § 35.130(a) provides that: "No qualified individual with a disability shall, on
the basis of disability, be excluded from participation in or be denied the benefits of the
services, programs, or activities of a public entity, or be subjected to discrimination by
any public entity."  Defendants' refusal to provide APS requested by the plaintiffs has
had the effect of denying them equal access to the pedestrian intersection crossing
services provided by Nassau County to resident who do not have a visual impairment.

89. 28 C.F.R. § 35.130(b)(1)(ii) provides that: "A public entity, in providing any aid,
benefit or service, may not….Afford a qualified individual with a disability an
opportunity to participate in or benefit from the aid, benefit, or service that is not equal
to that afforded to others." 28 C.F.R. § 35.130(b)(1)(iii) prohibits Nassau County from
failing to: "Provide a qualified individual with a disability with an aid, benefit or
service that is not as effective in affording equal opportunity to obtain the same result,
to gain the same benefit, or to reach the same level of achievement as provided to
others."

90. Defendants' failure to install APS along Hempstead Avenue is a clear example of a
failure to provide plaintiffs with an aid, benefit, or service (controlled pedestrian
intersection crossings) that is equal to the controlled pedestrian intersection crossings
that defendants provide to persons who do not have a visual impairment or that provide

17

the same, or that provides an equal opportunity to the plaintiffs to obtain the same

benefits and services that Nassau County has provided to non-disabled pedestrians.

91. 28 C.F.R. § 35.130(b)(3)(i) and (ii) provide that: "A public entity may not, directly or

indirectly…utilize criteria or methods of administration….That have the effect of

subjecting qualified individuals with disabilities to discrimination on the basis of

disability" or "That have the purpose or effect of defeating or substantially impairing

accomplishment of the objectives of the public entity's program with respect to

individuals with disabilities." Defendants publicly stated a policy of providing APS

only in neighborhoods near the homes of visually impaired individuals upon request by

such individuals. This policy is a method of administration of its pedestrian intersection

crossing program that limits installation of APS to a small subsection of the

intersections that could be used by visually impaired individuals. This limitation is

unequal and discriminatory.

92. 28 C.F.R. § 35.130(b)(7) provide that: "A public entity shall make reasonable

modifications in policies, practices, or procedures when the modifications are necessary

to avoid discrimination on the basis of disability, unless the public entity can

demonstrate that making the modifications would fundamentally alter the nature of the

service, program, or activity." Plaintiffs' prior oral and written requests to Nassau

County officials and employees to provide APS in Nassau County constitutes prima

facie evidence of a request for a reasonable modification of Nassau County's policy

with respect to provision of APS. Nassau County failed to respond to plaintiffs'

requests for a reasonable modification of its policies or practices related to installation

of APS.

18

93. The cost per APS unit is between $400.00 to $600.00. That is a comparatively small additional cost and would not create an undue burden upon defendant Nassau County. Compliance with plaintiffs' requests for installation of APS would further the fundamental purposes of Nassau County's pedestrian intersection crossing services.

94. All plaintiffs live close to the intersections along Hempstead Avenue that are set forth in Exhibit A.

95. Defendants knew of plaintiffs' need for audible crossing signals at the intersections set forth in Exhibit A and, despite that knowledge, intentionally refused to install audible crossing signals at the intersections along Hempstead Avenue and at other intersections set forth in Exhibit A.

96. Defendants' refusal to install APS in accordance with the Americans with Disabilities Act subjects the plaintiffs and other individuals with visual impairments to a substantially higher risk of bodily injury when they cross intersections without APS and to the apprehension of bodily harm each time they use an intersection without APS.

97. Defendants' refusal to install APS in accordance with the Americans with Disabilities Act subjects the plaintiffs and other individuals with visual impairments to inordinate fear of bodily injury when they cross intersections without APS. This fear causes plaintiffs to restrict their own participation in many aspects of social and public life routinely enjoyed by individuals who are not blind or visually impaired.

98. The lack of APS along Hempstead Avenue puts plaintiffs in inordinate fear of being struck by an automobile every time they have to cross Hempstead Avenue. That fear has forced plaintiffs to travel along circuitous routes that minimize crossing over Hempstead Avenue, secure rides from taxi companies, Nassau County's ABLE Transit

buses and others persons, and to request assistance from others to cross intersections –
often just to travel a few blocks from their homes.

99. Plaintiffs greatly value their independence and want to cross Hempstead Avenue
independently. Plaintiffs will cross Hempstead Avenue in the future and want to do so
with APS that will give them the same crossing information enjoyed by non-disabled
pedestrians.

### FIRST CAUSE OF ACTION: AMERICANS WITH DISABILITIES ACT

100.   Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth
herein.

101.   The County of Nassau is a New York State municipal corporation and a local
public entity which is bound by the mandates of the A.D.A.

102.   Plaintiffs Godino, Scharff and Molloy are qualified persons with disabilities as
that term is defined in the A.D.A., by virtue of being visually impaired and/or blind.

103.   Plaintiff LICB is group with standing to assert the associational rights of its
members to be free from discrimination because of the defendants' failures to provide
APS in Nassau County and its own organizational interest in obtaining APS in Nassau
County.

104.   The failure of the defendants to adopt a scheduled installation of APS at every
intersection where pedestrian crossing signals are currently provided discriminates
against the plaintiffs in violation of 28 C.F.R. §§ 35.130(b)(1)(ii) and (iii), in that it
ensures that plaintiffs and similarly situated individuals who are blind or who have a
severe visual impairment will have unequal access in the future to their ability to safely
cross Nassau County streets, and deprives them of an equal opportunity to obtain the

20

same benefit from Nassau County's pedestrian street crossing programs and services that defendants provide to non-disabled persons.

105.    The failure of the defendants to install APS every time Nassau County altered or newly installed a pedestrian crossing signal violated ADA requirements set forth in 28 C.F.R. §§ 35.151 (a) and (b).

106.    Nassau County's policy and practice of failing to install APS for visually impaired pedestrians, including the plaintiffs, violates the ADA duty set forth in 28 C.F.R. § 35.150, which requires defendants' pedestrian crossing signal programs and services to be readily accessible to and usable by the plaintiffs and other similarly situated individuals with disabilities.

107.    Nassau's County's failure to install APS along Hempstead Avenue in the locations set forth in Exhibit A violates defendants' ADA duties under 28 C.F.R. §130(b)(7) to make reasonable modifications to its policies and practices to provide to plaintiffs and others requesting APS.

108.    The discrimination by the defendants was knowing and intentional. As a direct consequence thereof, the plaintiffs sustained injury to their civil rights, emotional distress and apprehension of bodily harm from being struck by an automobile.

## SECOND CAUSE OF ACTION: THE REHABILITATION ACT

109.    Plaintiffs repeat and re-allege each of the foregoing allegations as if fully set forth herein.

110.    The County of Nassau is a New York State municipal corporation and a local public entity which receives federal financial funding for multiple governmental

programs, including transportation programs affecting the roadways and related infrastructure.

111.    For the reasons set forth in plaintiffs' cause of action under the ADA, the defendants also violated plaintiffs' rights to be free from discrimination on the basis of disability under the Rehabilitation Act.

112.    The discrimination by the defendants was knowing and intentional. As a direct consequence thereof, the plaintiffs sustained injury to their civil rights, emotional distress and apprehension of bodily harm.

### INJUNCTIVE RELIEF

113.    Injunctive relief is necessary to order the defendants to cease their violations of the ADA and the Rehabilitation Act, and to provide plaintiffs with the rights afforded to them under those federal laws. That relief must include installation of APS in compliance with all relevant parts of 28 C.F.R. §§ 35.150, 35.151, and 35.130(b)(7) as to all intersections along Hempstead Avenue set forth in Exhibit A.

114.    The unconscionable refusal of defendant Nassau County to install APS in the summer of 2009 along Hempstead Avenue provides reasonable grounds to believe that the defendants will continue to engage in acts and practices prohibited by the ADA that are complained of herein, if injunctive relief is not granted.

### DECLARATORY RELIEF

115.    Plaintiffs are entitled to a declaratory judgment specifying each of the ADA and Rehabilitation Act violations committed by the defendants and each of the plaintiffs' rights to relief as against the defendants under those federal laws.

## DAMAGES

116.    Plaintiffs demand TWENTY FIVE THOUSAND DOLLARS ($25,000.00) each

in  compensatory damages under the ADA and the Rehabilitation Act against defendant

Nassau County for its intentional, willful and unlawful conduct directed towards them

that gave cause to plaintiffs to file this Complaint.

## ATTORNEYS' FEES AND COSTS

117.    Plaintiffs had to retain the undersigned counsel in order to enforce their rights

under the ADA and the Rehabilitation Act. The undersigned counsel is entitled to

recover attorneys' fees, costs and expenses if the plaintiffs prevail in this lawsuit.

## JURY DEMAND

118.    Plaintiffs hereby demand trial by jury on the issue of damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for the following relief from the Court:

A.    Issue a permanent injunction against the defendants, requiring their agents,

servants and employees, and all persons or entities in active concert therewith, to

provide APS at all intersections complained of herein.

B.    Enter declaratory judgment in favor of the plaintiffs specifying their rights under

the ADA as against the defendants and specifying the defendants' violations of

the ADA.

C.    Award each plaintiff compensatory damages in the sum of TWENTY-FIVE

THOUSAND DOLLARS ($25,000.00).

D.      Find that plaintiffs are prevailing parties in this lawsuit and award attorneys' fees,

costs and expenses against defendant Nassau County, and award such other and

further relief, at law or equity, to which the plaintiffs may be justly entitled.

Dated:          Woodbury, New York
                September 10, 2010

                                        Martin J. Coleman, Esq.
                                        Law Office of Martin J. Coleman, P.C.
                                        100 Crossways Park West., Suite 412
                                        Woodbury, New York 11797
                                        (516) 802-5960; (516) 802-5961 (f)


                                        Robert Briglio, Esq.
                                        Nassau/Suffolk Law Services Committee, Inc.
                                        1757 Veterans Highway
                                        Islandia, New York 11749
                                        (631) 232-2400; (631) 232-2489 (f)

24